Jon M. Sands
Federal Public Defender
Cary Sandman (Arizona Bar No. 004779)
Assistant Federal Public Defender
407 W. Congress St., Suite 501
Tucson, Arizona 85701-1310
520.879.7622
520.622.6844 (facsimile)
cary_sandman@fd.org

Law Offices of Amy B. Krauss
Amy Krauss (Arizona Bar No. 013916)
P.O. Box 65126
Tucson, Arizona 85728-5126
520.400.6170
amy.krauss@azbar.org

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEORGE M. LOPEZ,<br><br>　　　　Petitioner - Appellant,<br><br>vs.<br><br>CHARLES R. RYAN, ET AL.<br><br>　　　　Respondents - Appellees. | No. 09-99028<br>D.C. NO. CIV 97-00224-CKJ<br><br>**MOTION TO STAY APPEAL AND FOR REMAND TO THE DISTRICT COURT FOR CONSIDERATION OF THE APPLICATION OF *MARTINEZ V. RYAN***<br><br>**Death Penalty Case<br>Oral Argument Set<br>May 10, 2012** |

On March 20, 2012, the United States Supreme Court issued its opinion in *Martinez v. Ryan*, No. 10-1001, 2012 WL 912950 (U.S. Mar. 20, 2012). In *Martinez*, the Court qualified its holding in *Coleman v. Thompson*, 501 U.S. 722 (1991), which held that an attorney's errors in a postconviction proceeding typically do not qualify as cause to excuse a default, by recognizing a narrow exception which had not been squarely addressed in *Coleman*: "Inadequate assistance of counsel at initial-review

collateral proceedings may establish cause for a prisoner's default of a claim of ineffective assistance at trial." *Id.* at \*5. The Supreme Court's decision in *Martinez* dramatically impacts the resolution of Lopez' appeal, as well as the proper consideration of certain ineffective assistance of trial claims, which in view of *Martinez*, the district court improvidently dismissed as procedurally defaulted.  For the reasons explained below, and particularly because factual development of *Martinez* engendered claims is essential, this Court should grant a stay of the appeal and a remand the case to the district court for its consideration of the application of *Martinez* to Lopez' case in the first instance.

## I.    The Contours of *Martinez* and its Application to Pending Cases

Under established Supreme Court jurisprudence "[f]ederal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules, [including] . . .the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  *Id.* at \*6.  In *Martinez*, the Supreme Court acknowledged that Arizona prisoners [like Lopez] who fail to present their ineffective assistance of trial counsel claims during their initial review collateral proceedings in state court would be barred from doing so in a subsequent state collateral proceeding, and that absent a showing of cause and prejudice, such ineffective assistance of trial counsel claims would be barred from federal habeas review under the procedural default doctrine. *Id*.

Previous to *Martinez*, district and appellate federal courts universally understood  the Supreme Court's decision in *Coleman v. Thompson,* 501 U.S. 722 (1991), to hold that the negligence of a prisoner's postconviction lawyer would not qualify as cause to excuse such a procedural default.  *Smith v. Baldwin*, 510 F.3d 1127, 1146 -1147 (9th Cir. 2007) (under *Coleman,* attorney ineffectiveness in the

postconviction process is not considered cause for the purposes of excusing the procedural default at that stage); *Bonin v. Calderon,* 77 F.3d 1155, 1159 (9th Cir. 1996). Nevertheless, as the Supreme Court clarified in *Martinez,* its decision in "*Coleman,* did not [actually] present the occasion to . . . determine whether attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default," *Id.* at *6, and accordingly, as a matter of first impression, the Court held that ineffective assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel at trial. *Id.* at *5. The Court went on to hold that to demonstrate cause for a default, a petitioner would be required to establish (1) that his initial review postconviction lawyer was ineffective under the standard of *Strickland v. Washington,* 466 U.S. 668 (1984), and (2) that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Id.* at *8. With respect to this latter requirement, to establish that the underlying ineffective assistance claim is substantial, the Court cited to the minimal showing needed for a certificate of appealability to issue. *Id.*

Because the Court gave Martinez himself retroactive benefit of the its decision, *Martinez*, 2012 WL 912950, at *11 (remanding to the court of appeals to determine the application of the decision to the petitioner Martinez), the decision must be given retroactive effect in all other courts where the application for habeas relief is still pending. See *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 90, 96 (1993) ("[W]e hold that this Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision.") Moreover, the Court clearly evidenced its intention that its decision be made applicable to pending cases. Six days after *Martinez* was decided, the Supreme Court granted

3

certiorari, vacated opinions, and remanded five federal habeas cases to the United States Courts of Appeals for the Fifth, Sixth and Ninth Circuits for reconsideration in light of *Martinez*. *Smith v. Colson*, No. 10-8629, 2012 WL 986816 (U.S. Mar. 26, 2012); *Cantu v. Thaler*, No. 10-11031, 2012 WL 986818 (U.S. Mar. 26, 2012); *Middlebrooks v. Colson*, No. 11-5067, 2012 WL 986820 (U.S. Mar. 26, 2012); *Newbury v. Thaler*, No. 11-6969, 2012 WL 986822 (U.S. Mar. 26, 2012); *Woods v. Holbrook*, No. 11-7978, 2012 WL 986823 (U.S. Mar. 26, 2012). In addition, since *Martinez* did not announce a new rule of constitutional law, no bar exists to limit its application to pending habeas cases. *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1188 (9th Cir. 2011). It follows for all these reasons that the Supreme Court's ruling in *Martinez* applies to Lopez' pending habeas corpus proceeding.

        *Martinez* provides a road map for Lopez to show cause that will excuse his postconviction attorney's failure to bring or develop the factual basis of claims concerning the ineffectiveness of his trial counsel. But as explained below, the requisite showing of cause and prejudice will require factual and evidentiary development uniquely suitable to district court proceedings, and for that reason remand to the district court is the appropriate remedy. *Loveland v. Hatcher*, 231 F.3d 640, 644-45 (9th Cir. 2000) (remanding to district court for evidentiary hearing to develop cause and prejudice argument); 28 U.S.C. §2106 (court of appeals "may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.")

## II.    Background and Procedural Status of Lopez' Claims

        In his federal habeas petition Lopez alleged that he was denied effective assistance of his trial counsel during the guilt and sentencing phases of his capital

4

proceedings.  Hitherto, these claims have suffered varying degrees of default due to negligence of Lopez' postconviction counsel during his initial state postconviction proceeding.  For the reasons explained below, a remand to the district court is required so that Lopez can establish cause for his postconviction attorney's default in the presentation and development of his claims.

### A. *Ineffective Assistance of Counsel at Trial - Failure to Investigate Lopez' Mental State Supportive of the Defense Theory*

Under Arizona's child abuse and felony murder statutes as extant during Lopez trial, where abuse of a child is committed intentionally or knowingly, the defendant qualifies for conviction of felony murder.  (See 1989 version of A.R.S. § 13-3623, A.R.S. § 13-1105 in Appendices 1 and 2.)  However, even under circumstances where the child abuse is likely to produce death, if the abuse was committed recklessly, the defendant would be subject to conviction of a non-capital offense.  *Id.*  In relevant part, reckless conduct means "with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists."  (1989 version of A.R.S. § 13-105.6(c), Appendix 3).

Under this statutory scheme, Lopez' jury could have convicted him of a non-capital offense, if it believed that Lopez abused his son under circumstances likely to cause death, where Lopez "[was] aware of and consciously disregarded a substantial and unjustifiable risk that the death would occur."  *Id.*  Abuse committed in a non-premeditated explosive episode could qualify as reckless conduct under this statutory scheme, rendering Lopez guilty of a non-capital offense.  Trial counsel was very much aware of these mental culpability factors.  He structured the entire defense around Lopez' mental state.  For instance, during counsel's opening statement at trial he told the jury they would <u>not</u> be asked to render a not guilty verdict; rather, counsel

5

told the jury up-front that its sole task would be to find Lopez guilty of a "lesser included offense." (ER 438-439.) During closing argument, defense counsel argued that the state had failed to prove Lopez' intent. (SER 853-855, 857-863, 866, 869-871.)[1] Even the prosecution recognized that Lopez' actions were likely the result of a loss of emotional control, rather than the by-product of intentional conduct. See, *State v. Lopez*, 174 Ariz. 131, 145, 847 P.2d 1078, 1092 (Ariz.1992) (Feldman, J., Specially Concurring) ("the prosecution effectively conceded that there was little or no evidence of intent to kill and that the most probable explanation for the child's death was that Defendant became enraged, lost control, and beat the child quite seriously.") Whether Lopez acted intentionally or recklessly was the key issue during the guilt phase of the proceedings.

It was within this factual setting that Lopez' district court habeas counsel alleged that trial counsel had rendered ineffective assistance of counsel through his failure to conduct an adequate pre-trial investigation of Lopez's diminished capacity, which in turn would have influenced the jury's assessment of whether Lopez acted recklessly at the time of the offense. (ER 214-217.) In the habeas petition, counsel pointed to testimony received during Lopez' initial review postconviction proceeding, which demonstrated that the examining psychologist, Dr. Morris, was woefully unprepared to conduct a meaningful evaluation of Lopez due to trial counsel's failure to provide Morris with any social history. (ER 215-216.) On this score, the habeas petition also pointed to trial counsel's testimony during the initial state postconviction proceeding, where counsel admitted that: (1) he provided no direction to Dr. Morris, and (2) without any supporting strategy, he never even considered investigating the

---

[1]For consistency, Lopez has included his supplemental record citations in a Supplemental Excerpt of Record ("SER"). Four copies of the SER will be filed with the clerk of the court in accordance with Circuit Rules.

6

possibility that Lopez' mental state might support a finding that he acted recklessly when he killed his son.  (ER 217.)  Finally, the habeas petition alleged that trial counsel never asked Dr. Morris to investigate the possibility that Lopez exhibited the character trait for impulsivity or acting without reflection (ER 215), an obvious grievous pre-trial investigative flaw, since under Arizona law, any diminished capacity defense would be limited to a showing of this tendency to impulsivity. See *State v. Christensen,* 129 Ariz. 32, 34-36, 628 P.2d 580, 582-84 (Ariz.1981).

The above summary shows that the  habeas petition clearly described the deficient performance of Lopez' trial counsel.  See e.g., *Turner v. Duncan*, 158 F.3d 449 (9th Cir. 1998) (the failure to investigate, and present expert testimony to support defendant's claim that he acted reflexively, without premeditation was particularly egregious given defense strategy rested on disproving premeditation). But that was not the end of the matter, because Respondents argued that the subject claim was not presented in the state court postconviction proceedings and that the claim was procedurally defaulted.  (SER 840-842.)  Confronted with the prospect of a default, Lopez countered with the argument that any default in his claim alleging the ineffectiveness of his trial counsel was the result of ineffectiveness of his state postconviction lawyer. (SER 837-838.)    The allegation that Lopez' state postconviction counsel was deficient was afforded no legal significance.  The district court agreed with the Respondents and declared the claim procedurally defaulted. (SER 811-812.)

As noted, district court habeas counsel did allege that this claim was defaulted by reason of the ineffective assistance of postconviction counsel. (SER 837-838.) This accusation was well founded but also requires additional factual development in the district court upon remand.   The record shows that Lopez' state court postconviction counsel made some  strides in demonstrating that trial counsel had

7

performed deficiently. Postconviction counsel presented evidence that trial counsel had failed to properly prepare Dr. Morris for his examination of Lopez , and that trial counsel had abandoned any investigation of Lopez' mental state at the time of the offense, without any supporting strategy. (ER 214-217; 430-432; 438-440; 443-444; 450-455.)    But in a surprising turn, after mounting an attack on trial counsel's deficient pre-trial investigation of Lopez' mental state, postconviction counsel failed to undertake any investigation of her own. This left Lopez without any evidence that might show that he was prejudiced by his trial counsel's performance, a prerequisite to relief against trial counsel under *Strickland*. No reasonable strategy could support postconviction counsel's decision to forgo an investigation of the very claim she had raised. See *Martinez*, 2012 WL 912950, \*7 ("Without the help of an adequate attorney, a prisoner will have similar difficulties vindicating a substantial ineffective-assistance-of-trial-counsel claim. Claims of ineffective assistance at trial often require investigative work and an understanding of trial strategy.") Postconviction counsel repeated the errors of trial counsel and did nothing to correct them. Because this claim against postconviction counsel was never considered by the district court, and requires further factual development, it should be the subject of the district court remand.

The underlying claim of ineffective assistance of trial counsel also requires factual development. District court habeas counsel raised this ineffective assistance of trial counsel claim once their independent investigation revealed that Lopez had likely suffered from serious neurological impairments and brain damage due to a series of head injuries and probable fetal alcohol effects from Lopez' mother's heavy consumption of alcohol during her pregnancies. (ER 264-272; SER 833-838.) Based on their investigation, habeas counsel made application to the district court for the funding of a neuropsychological evaluation of Lopez. (ER 264-273; SER 819-823.)

8

Nevertheless, consequent to the procedural default of the claim, the district court denied funding for the requested neuropsychological evaluation. (SER 815-818.) Upon remand, a complete evaluation of Lopez' mental health and organic deficits for their relation to his *Strickland* claim against trial counsel must finally ensue.

### B. Ineffective Assistance of Counsel at Sentencing - Failure to Investigate and Present Mitigation

The pending appeal follows this Court's earlier decision in *Lopez v. Schriro*, 491 F.3d 1029 (9th Cir. 2007) ("*Lopez I")*. In *Lopez I*, the court determined that Lopez had exhausted the claim that his trial counsel had failed to investigate and present mitigation during sentencing. 491 F.3d 1040-41. The Court noted that some of the evidence supporting this claim was not presented to the state court and that "[o]n remand the district court will therefore need to determine whether Lopez, who received an evidentiary hearing in state court, is entitled to supplement the record or receive an additional evidentiary hearing in federal court" [under] . . . 28 U.S.C. § 2254(e)(2)." *Lopez I*, at 491 F.3d 1041, n. 8. After remand, the district court summarized the mitigation evidence proffered by Lopez in his habeas petition.

> [In his habeas petition Lopez] contended that counsel should have investigated Petitioner's developmental history and presented evidence of his organic brain damage due to fetal alcohol syndrome or head trauma. Such evidence could support the statutory mitigating circumstance set forth in A.R.S. § 13-703(G)(1), that Petitioner's ability to appreciate the wrongfulness of his conduct or conform it to the law was significantly impaired. The same evidence could have been used to support a non-statutory mitigating factor that Petitioner did not intend to kill. Second, Petitioner alleged his counsel should have investigated and presented evidence of the dysfunctional home in which Petitioner was raised. This information included the fact that Petitioner was raised in extreme poverty; his home had no electricity, and he was often hungry and poorly clothed. He was also exposed to domestic violence between his alcoholic parents and frequently played a peace-keeping role. In high school, Petitioner perceived himself as an outcast. These circumstances suggest that Petitioner may suffer from organic brain damage, and the violent atmosphere in which he was raised may have

influenced him to respond to stressors with physical violence. Finally, Petitioner alleged his counsel should have investigated and presented evidence that Petitioner was the victim of a homosexual assault as a child, had a good employment record, and was remorseful.

(ER 11-12.)

After reciting the new evidence that Lopez sought to present in support of his claim, the district court went on to hold that <u>all</u> of the evidence was subject to preclusion under subsection 2254(e)(2). As the Court knows, subsection (e)(2) prevents a habeas petitioner from presenting evidence in support of his claim if petitioner or his counsel is less than diligent in developing the factual basis of his claim in state court proceedings. *Williams v. Taylor*, 529 U.S. 420, 432 (2000) ("[A] failure to develop the factual basis of a claim is not established unless there is a lack of diligence or some greater fault, attributable to the prisoner or the prisoner's counsel.")

In his briefing in the remanded district court proceedings and in the pending appeal, Lopez has only proffered some new evidence of his dysfunctional childhood. That is because Lopez was forced to concede that all of the other evidence, including evidence of his probable organic deficits would be barred under subsection (e)(2). (See Opening Brief at 42-43.) Nevertheless, of significance here is that the district court found that Lopez' state postconviction counsel was <u>not</u> diligent in developing the factual basis of any portion of the subject ineffective assistance of counsel claim. The district court made specific findings concerning the deficiencies in Lopez' state postconviction counsel's performance, including the finding that postconviction counsel "was alert to the type of evidence that sentencing counsel failed to investigate, but did not in turn try to develop the corresponding evidence of prejudice arising from trial counsel's alleged deficiencies." (ER 17-20.) Likewise during the first phase of the district court proceedings, Lopez' habeas counsel charged that state

10

postconviction counsel was ineffective in presenting and developing this claim. (SER 835-836.)

The deficiencies in postconviction counsel's performance in failing to develop the factual basis of Lopez' claim raises the question, whether deficient acts or omissions of postconviction counsel, during an initial state postconviction proceeding, can fairly be attributed to the petitioner under § 2254(e)(2).  Lopez submits that *Martinez* dictates that the answer to the presented question must be no. Admittedly, *Martinez* dealt with the habeas doctrine of cause and prejudice, as applied to excusing the failure to present an entire claim to a state court for resolution in a manner consistent with state procedural rules.  The failure here, by contrast, concerns the failure to submit readily available evidence in support of a presented claim.  The Supreme Court has previously held that there is no rational distinction between a default in presentment of a claim and the failure to develop the factual basis of a claim. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8 (1992) (deciding that the failure to present a claim in state court and the failure to develop the factual basis of the claim in state court would be adjudicated under the same cause and prejudice standard because it is "irrational to distinguish between failing to properly assert a federal claim in state court and failing in state court to properly develop such a claim.")  *Keeney* of course has been supplanted by § 2254(e)(2) but not in any material respect here.  In *Williams,* the Supreme Court equated the element of diligence needed to qualify for a federal hearing under § 2254(e)(2), with the typical  showing of "cause" for procedural default; explaining that Williams' failure to develop the factual basis of the claim would be excusable on the same grounds excusing his failure to present the claim in the state court in the first instance.  *Williams v. Taylor,* 529 U.S. at 444 ("[o]ur analysis should suffice to establish 'cause' for any procedural default" excusing petitioner for not presenting the claim in the state court proceedings, in the first

11

instance).  Parroting *Keeney,* there is no rational distinction between a default in the presentation of a claim or in the failure to develop the claim, and accordingly, the *Martinez* holding, that ineffective assistance of state postconviction counsel excuses a procedural default, must extend to defaults which arise for lack of diligence in meeting the requirements of § 2254(e)(2).

Lopez has already  presented evidence to this Court that he has a substantial claim that he was denied effective assistance of counsel during the penalty phase of his capital proceedings, when his trial counsel failed to investigate and present readily available mitigation evidence that would have tipped the scales against a sentence of death. (See Opening Brief at 22-39.)  The district court has already held that state postconviction counsel "was alert to the type of evidence that sentencing counsel failed to investigate, but [due to lack of requisite diligence she] did not in turn try to develop the corresponding evidence of prejudice arising from trial counsel's alleged deficiencies." (ER 17-20.) The district court's assessment of postconviction counsel's performance instantly contemplates the existence of a colorable claim that postconviction counsel's performance was deficient under *Strickland*.  Nevertheless additional fact development of the claim against trial counsel and the sub-claim against postconviction counsel is needed.[2]  For example, as explained above, the district court refused funding for Lopez neuropsychological evaluation; thus Lopez has not yet been able to develop and present facts relevant to the demonstration of prejudice under *Strickland*. (SER 815-818.)  Accordingly remand of this claim for

[2]Lopez recognizes that once these additional facts are admitted in support of his claim that this would fundamentally alter his claim rendering it unexhausted and technically defaulted. *Vasquez v. Hillery,* 474 U.S. 254, 260, 106 S.Ct. 617 (1986). Nevertheless, *Martinez* dictates that the default is excusable by reason of the neglect of Petitioner's postconviction counsel during his initial state collateral proceeding.

1  further fact development is required.[3]

### C.  *Ineffective Assistance of Counsel at Sentencing - Failure to Investigate and Present Rebuttal Mitigation*

In *Lopez I*, this Court affirmed the district court's decision that Lopez suffered a procedural default of the claim that his trial counsel was also ineffective for failing to rebut the testimony of the state's aggravation witness, Dr. Hobeich, who presented testimony about the pain Lopez's son likely suffered before death. *Lopez v. Schriro,* 491 F.3d at 1041-43. In that appeal, Lopez did not attempt to prove cause and prejudice for the default. *Id.* at 1043, n.11. In light of *Martinez*, the district court should properly consider on remand whether inadequate assistance of Lopez' state postconviction attorney establishes cause for the default in this claim. The habeas petition aptly sets forth a substantial claim of ineffective assistance against trial counsel, and district court habeas counsel alleged that any default in the claim should be attributed to ineffective assistance of postconviction counsel. (ER 219-226; SER 844-851, 834.) The claim should be remanded for further evidentiary and factual development.

### III.  Conclusion

For the reasons stated, the Court should stay the appeal and remand to the district court for consideration of Lopez' federal claims under the proper standard

---

[3]In the current appeal, Lopez has argued that his postconviction lawyer was sufficiently diligent in a single respect: that postconviction counsel's presentation of some social history mitigation evidence was sufficiently developed in the state court proceedings, to escape the bar in § 2254(e)(2) and permit him to supplement the record with some additional supportive evidence, that did not significantly alter his claim. (See Opening Brief 41-50 and Reply Brief at 25-33.) Were this Court to affirm the district court's decision, that postconviction counsel was not diligent even in this sole respect, then Lopez submits that this would constitute additional evidence that his postconviction counsel's performance was deficient under *Strickland*.

13

1  announced in *Martinez*.

2      Respectfully submitted this 11th day of April, 2012.

3                                      Jon M. Sands
                                       Federal Public Defender
4                                      Cary Sandman
                                       Assistant Federal Public Defender
5

6                                      By s/Cary Sandman
7                                            Counsel for Petitioner-Appellant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                14

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2012, I electronically transmitted the attached document to the Clerk's office of the United States Court of Appeals for the Ninth Circuit using the CM/ECF System for filing and transmitted a Notice of Electronic Filing to the following registrants:

Kent E. Cattani
Assistant Attorney General
Office of the Attorney General
1275 W. Washington St.
Phoenix, Arizona 85007-2926

Amy Pignatella Cain
Assistant Attorney General
Office of the Attorney General
400 W. Congress, Ste. S-315
Tucson, Arizona 85701-1367

On April 11, 2012, I certify that four copies of the Supplemental Excerpts of Record were sent to the Court via FedEx, and one copy was sent to Kent E. Cattani and Amy Pignatella Cain at the address above via FedEx.


By:  s/ Tamelyn McNeill
        Tamelyn McNeill
        Secretary, Capital Habeas Unit

15

# Appendix 1

Westlaw.

Page 1

A.R.S. § 13-3623

ARIZONA REVISED STATUTES ANNOTATED
COPR. (c) WEST 1989 No Claim to Orig. Govt. Works
TITLE 13. CRIMINAL CODE
CHAPTER 36. **FAMILY OFFENSES**

§ **13-3623**. Child abuse; definitions; classification

**A.** In this section, unless the context otherwise requires:
1. "Child, youth or juvenile" means an individual who is under the age of eighteen years of age.
2. "Physical injury" means the impairment of physical condition and includes but shall not be limited to any skin bruising, bleeding, failure to thrive, malnutrition, burns, fracture of any bone, subdural hematoma, soft tissue swelling, injury to any internal organ or any physical condition which imperils a child's health or welfare.
3. "Serious physical injury" means physical injury which creates a reasonable risk of death, or which causes serious or permanent disfigurement, or serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb.
**B.** Under circumstances likely to produce death or serious physical injury, any person who causes a child to suffer physical injury or, having the care or custody of such child, causes or permits the person or health of such child to be injured or causes or permits such child to be placed in a situation where its person or health is endangered is guilty of an offense as follows:
1. If done intentionally or knowingly, the offense is a class 2 felony and if the victim is under fifteen years of age it is punishable pursuant to § 13-604.01.
2. If done recklessly, the offense is a class 3 felony.
3. If done with criminal negligence, the offense is a class 4 felony.
**C.** Under circumstances other than those likely to produce death or serious physical injury to a child, any person who causes a child to suffer physical injury or abuse as defined in § 8-546, subsection A, paragraph 2 except for those acts in the definition which are declared unlawful by another statute of this title or, having the care or custody of such child, causes or permits the person or health of such child to be injured or causes or permits such child to be placed in a situation where its person or health is endangered is guilty of an offense as follows:
1. If done intentionally or knowingly, the offense is a class 4 felony.
2. If done recklessly, the offense is a class 5 felony.
3. If done with criminal negligence, the offense is a class 6 felony.

1989 Main Volume Credit(s)

Added by Laws 1979, Ch. 136, § 1. Amended by Laws 1981, Ch. 293, § 7; Laws 1985, Ch. 364, § 31, eff. May 16, 1985.

HISTORICAL NOTES

HISTORICAL AND STATUTORY NOTES

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Appendix 2

Westlaw.

A.R.S. § 13-1105

ARIZONA REVISED STATUTES ANNOTATED
COPR. (c) WEST 1989 No Claim to Orig. Govt. Works
TITLE 13. CRIMINAL CODE
CHAPTER 11. **HOMICIDE**

§ **13-1105**. First degree murder; classification

**A.** A person commits first degree murder if:
1. Intending or knowing that his conduct will cause death, such person causes the death of another with premeditation; or
2. Acting either alone or with one or more other persons such person commits or attempts to commit sexual conduct with a minor under § 13-1405, sexual assault under § 13-1406, molestation of a child under § 13-1410, narcotics offenses under § 13-3408, subsection A, paragraph 7 or § 13-3409, kidnapping under § 13-1304, burglary under § 13-1506, 13-1507 or 13-1508, arson of an occupied structure under § 13-1704, robbery under § 13-1902, 13-1903 or 13-1904, escape under § 13-2503 or 13-2504 or child abuse under § 13-3623, subsection B, paragraph 1, and in the course of and in furtherance of such offense or immediate flight from such offense, such person or another person causes the death of any person.
**B.** Homicide, as defined in subsection A, paragraph 2 of this section, requires no specific mental state other than what is required for the commission of any of the enumerated felonies.
**C.** First degree murder is a class 1 felony and is punishable by death or life imprisonment as provided by § 13-703.

1989 Main Volume Credit(s)

Added by Laws 1977, Ch. 142, § 60, eff. Oct. 1, 1978. Amended by Laws 1978, Ch. 201, § 127, eff Oct. 1, 1978; Laws 1980, Ch. 229, § 14, eff. April 23, 1980; Laws 1981, Ch. 264, § 5, eff. Sept. 1, 1981; Laws 1983, Ch. 202, § 4; Laws 1985, Ch. 364, § 13, eff. May 16, 1985; Laws 1987, Ch. 307, § 7.

HISTORICAL NOTES

HISTORICAL AND STATUTORY NOTES

1989 Main Volume Historical and Statutory Notes

Source:
Pen.Code 1901, § 173.
Pen.Code 1913, § 172.
Rev.Code 1928, §§ 4584, 4585.
Code 1939, §§ 43-2902, 43-2903.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Appendix 3

Westlaw.

A.R.S. § 13-105

ARIZONA REVISED STATUTES ANNOTATED

COPR. (c) WEST 1989 No Claim to Orig. Govt. Works
TITLE 13. CRIMINAL CODE
CHAPTER 1. **GENERAL PROVISIONS**

§ 13-105. Definitions

In this title, unless the context otherwise requires:

1. "Act" means a bodily movement.

2. "Benefit" means anything of value or advantage, present or prospective.

3. "Calendar year" means three hundred sixty-five days actual time served without release, suspension or commutation of sentence, probation, pardon or parole, work furlough or release from confinement on any other basis.

4. "Conduct" means an act or omission and its accompanying culpable mental state.

5. "Crime" means a misdemeanor or a felony.

6. "Culpable mental state" means intentionally, knowingly, **recklessly** or with criminal negligence as those terms are thusly defined:

(a) "Intentionally" or "with the intent to" means, with respect to a result or to conduct described by a statute defining an offense, that a person's objective is to cause that result or to engage in that conduct.

(b) "Knowingly" means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that his or her conduct is of that nature or that the circumstance exists. It does not require any knowledge of the unlawfulness of the act or omission.

(c) "**Recklessly**" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware of such risk solely by reason of voluntary intoxication also acts **recklessly** with respect to such risk.

(d) "Criminal negligence" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

7. "Dangerous drug" means dangerous drug as defined by § 13-3401.

8. "Dangerous instrument" means anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury.

9. "Deadly physical force" means force which is used with the purpose of causing death or serious physical injury or in the manner of its use or intended use is capable of creating a substantial risk of causing death or serious physical injury.

10. "Deadly weapon" means anything designed for lethal use. The term includes a firearm.

11. "Economic loss" means any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

12. "Enterprise" includes any corporation, association, labor union or other legal entity.

13. "Felony" means an offense for which a sentence to a term of imprisonment in the custody of the state department of corrections is authorized by any law of this state.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

14. "Firearm" means any loaded or unloaded pistol, revolver, rifle, shotgun or other weapon which will or is designed to or may readily be converted to expel a projectile by the action of expanding gases, except that it does not include a firearm in permanently inoperable condition.

15. "Government" means the state, any political subdivision of the state or any department, agency, board, commission, institution or governmental instrumentality of or within the state or political subdivision.

16. "Government function" means any activity which a public servant is legally authorized to undertake on behalf of a government.

17. "Intoxication" means any mental or physical incapacity resulting from use of drugs, toxic vapors or intoxicating liquors.

18. "Misdemeanor" means an offense for which a sentence to a term of imprisonment other than to the custody of the state department of corrections is authorized by any law of this state.

19. "Narcotic drug" means narcotic drugs as defined by § 13-3401.

20. "Offense" or "public offense" means conduct for which a sentence to a term of imprisonment or of a fine is provided by any law of the state in which it occurred or by any law, regulation or ordinance of a political subdivision of that state and, if the act occurred in a state other than this state, it would be so punishable under the laws, regulations or ordinances of this state or of a political subdivision of this state if the act had occurred in this state.

21. "Omission" means the failure to perform an act as to which a duty of performance is imposed by law.

22. "Peace officer" means any person vested by law with a duty to maintain public order and make arrests.

23. "Person" means a human being and, as the context requires, an enterprise, a public or private corporation, an unincorporated association, a partnership, a firm, a society, a government, a governmental authority or an individual or entity capable of holding a legal or beneficial interest in property.

24. "Petty offense" means an offense for which a sentence of a fine only is authorized by law.

25. "Physical force" means force used upon or directed toward the body of another person and includes confinement, but does not include deadly physical force.

26. "Physical injury" means the impairment of physical condition.

27. "Possess" means knowingly to have physical possession or otherwise to exercise dominion or control over property.

28. "Possession" means a voluntary act if the defendant knowingly exercised dominion or control over property.

29. "Property" means anything of value, tangible or intangible.

30. "Public servant" means any officer or employee of any branch of government, whether elected, appointed or otherwise employed, including a peace officer, and any person participating as advisor, consultant or otherwise in performing a governmental function. The term does not include jurors or witnesses. "Public servant" includes those who have been elected, appointed, employed or designated to become a public servant although not yet occupying that position.

31. "Serious physical injury" includes physical injury which creates a reasonable risk of death, or which causes serious and permanent disfigurement, or serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb.

32. "Unlawful" means contrary to law or, where the context so requires, not permitted by law.

33. "Vehicle" means a device in, upon or by which any person or property is or may be transported or drawn upon a highway, waterway or airway, excepting devices moved by human power or used exclusively upon stationary rails or tracks.

34. "Voluntary act" means a bodily movement performed consciously and as a result of effort and determination.

35. "Voluntary intoxication" means intoxication caused by the knowing use of drugs, toxic vapors or intoxicating liquors by a person, the tendency of which to cause intoxication the person knows or ought to know, unless the person introduces them pursuant to medical advice or under such duress as would afford a defense to an offense.

1989 Main Volume Credit(s)

Added by Laws 1977, Ch. 142, § 39, eff. Oct. 1, 1978. Amended by Laws 1978, Ch. 201, § 89, eff. Oct. 1, 1978; Laws 1981, Ch. 116, § 1; Laws 1981, Ch. 264, § 1, eff. Sept. 1, 1981; Laws 1982, Ch. 292, § 4; Laws 1985, Ch. 329, § 1; Laws 1986, Ch. 248, § 1; Laws 1986, Ch. 256, § 2.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.